# Exhibit 1

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

RODERICK TERRY                              )
18 R STREET, NW                             )
WASHINGTON, DC 20001                        )
                                            )
        Plaintiff,                          )
                                            )
v.                                          )        Civil Action No._____
                                            )
CASSANDRA SNEED OGDEN                       )
COUNCIL ON LEGAL EDUCATION                  )
OPPORTUNITY (CLEO)                          )
740 15TH STREET, NW 1ST FLOOR               )
WASHINGTON, DC 20005                        )
                                            )
        And                                 )
                                            )
COUNCIL ON LEGAL EDUCATION                  )
OPPORTUNITY (CLEO)                          )
740 15TH STREET, NW 1ST FLOOR               )
WASHINGTON, DC 20005                        )
                                            )
        And                                 )
                                            )
AMERICAN BAR ASSOCIATION                    )
321 NORTH CLARK STREET 60654                )
21ST FLOOR                                  )
CHICAGO, IL                                 )
                                            )
        And                                 )
                                            )
ELISSA LICHTENSTEIN                         )
AMERICAN BAR ASSOCIATION                    )
740 15TH STREET, NW 1ST FLOOR               )
WASHINGTON, DC 20005                        )
                                            )
        Defendants.                         )
_____     )

## NOTICE OF CONSENT TO REMOVAL

        Defendant Cassandra Sneed Ogden, by and through the undersigned counsel and without

waiving, and specifically reserving, all defenses, objections, exceptions and motions, including

but not limited to lack of service, improper service, lack of personal jurisdiction and arbitrability of these claims, consents to, authorizes and joins in the removal of the above-captioned action from the Superior Court of the District of Columbia to this Honorable Court.

Dated: October 2, 2012

Respectfully submitted,

Robert R. Niccolini (Bar No. 1000251)
Ogletree, Deakins, Nash, Smoak &
Stewart, P.C.
1909 K Street NW, Suite 1000
Washington, D.C. 20006
(202) 263-0241
(202) 887-0866 (fax)
Robert.Niccolini@odnss.com

*Counsel for Defendant Cassandra Sneed Ogden*

# Exhibit 2

14850990v.1

IN THE SUPERIOR COURT FOR THE DISTRICT OF COLUMBIA
Civil Division

RODERICK TERRY                              )
18 R STREET, NW                             )
WASHINGTON, DC  20001                       )
                                            )
        PLAINTIFF                           )
                                            )
        v.                                  )
                                            )
CASSANDRA SNEED OGDEN                        )
COUNCIL ON LEGAL EDUCATION                  )
OPPORTUNITY (CLEO)                          )
740 15TH STREET, NW 1st FLOOR               )
WASHINGTON, DC 20005                        )
                                            )
                                            )
        And                                 )
                                            )
COUNCIL ON LEGAL EDUCATION                  )
OPPORTUNITY (CLEO)                          )
740 15TH STREET, NW 1st FLOOR               )
WASHINGTON, DC 20005                        )
                                            )
        And                                 )
                                            )
AMERICAN BAR ASSOCIATION                     )      0006536-12
321 NORTH CLARK STREET                       )   Civil Action No.:
21st FLOOR                                   )
CHICAGO, IL  60654                           )
                                            )
        And                                 )
                                            )
ELISSA LICHTENSTEIN                          )
AMERICAN BAR ASSOCIATION                     )
740 15TH STREET, NW 1st FLOOR               )
WASHINGTON, DC 20005                        )
                                            )
        DEFENDANTS.                          )
                                            )

## COMPLAINT

Plaintiff Roderick Terry, by and through his attorneys, sues Defendants Cassandra Sneed Ogden, the Council on Legal Education Opportunity (CLEO), the American Bar Association (ABA), and Elissa Lichtenstein and for his Complaint states as follows:

### JURISDICTION and VENUE

1.     This Court has jurisdiction over the subject matter of this complaint pursuant to D.C. Code Ann. § 11-921.

2.     Venue is proper in this Court in that the events giving rise to Mr. Terry's claims occurred here in the District of Columbia and Defendants may be found in the District of Columbia.

### PARTIES

3.     Roderick Terry is a citizen of the United States and a resident of the District of Columbia.

4.     Defendant Ogden is the Executive Director of the Council on Legal Education Opportunity (CLEO).  CLEO is a non-profit entity within the American Bar Association under the ABA Fund for Justice and Education. CLEO's mission is to diversify the legal profession by improving the enrollment and graduation rates of minority students in ABA-accredited law schools.  Defendant Lichtenstein is a Director at ABA and responsible for oversight of CLEO.

### FACTUAL ALLEGATIONS

5.     Mr. Terry is a licensed attorney employed by Defendant ABA.  Mr. Terry graduated from law school in 1989, and acquired litigation and transactional experience with a law firm in Pittsburgh, and was later employed with the Office of the Attorney

General for the District of Columbia, and in private practice.  He is admitted to the District of Columbia bar and is in good standing.

6.      In November 2003, Mr. Terry was hired by the ABA for the position of Law School Academic Coordinator for CLEO in Washington, DC.  In that position, he coordinated academic enhancement seminars for student participants in the Thurgood Marshall Legal Educational Opportunity Program (Thurgood Marshall), and provided ongoing academic support and counseling for the participants.

7.      The U.S. Department of Education (DOE) requires ABA/CLEO to submit annual budgets to DOE that set forth federal fund expenditures by project, the personnel who will work on those projects, and the projected expenses for each line item.  This is required since Congress has directly appropriated, by statute, the DOE's annual payments to the Thurgood Marshall program.

8.      In June 2006, the ABA promoted Mr. Terry to the position of Associate Director of CLEO.  In that position, he reported to Cassandra Sneed Ogden, CLEO Executive Director. His job responsibilities included assisting the Executive Director with preparing program budgets that CLEO submitted to DOE, monitoring CLEO's compliance with the budgets, and serving as the ABA's liaison to the DOE regarding federal grant and budget compliance.  He also performed a wide range of responsibilities related to CLEO's operations, student outreach, program development, and provided support on academic, legal and policy issues related to the funded projects, and supported the work of the CLEO Council and its committees. Through March 2011, Mr. Terry consistently received highly favorable performance evaluations and several performance-based bonuses.

3

9.      As CLEO Associate Director, Mr. Terry supervised five staff members. When Mr. Terry was promoted to the Associate Director position, the ABA hired a male employee as the new CLEO Law School Academic Coordinator, and the male employee reported directly to Mr. Terry.    In June 2009, the male employee filed a complaint against Ms. Ogden for vision impairment discrimination in violation of the Americans with Disabilities Act.  The male employee alleged that Ms. Ogden, starting in September 2008, discriminated against him after he requested a reasonable accommodation for this vision impairment.

10.      On September 9, 2008, Ms. Ogden complained to Mr. Terry that the male employee was "claiming to have vision problems," and stated "we need to get rid of him." Ms. Ogden directed Mr. Terry to contact the ABA Human Resources office to put the male employee on a performance track, the first step in the disciplinary process.

11.      Later that year, on December 4, 2008, Ms. Ogden complained to Mr. Terry that he should have been finding performance problems with the male employee so that they could "get him out of here," and continued to pressure Mr. Terry to build a case against the male employee. Mr. Terry insisted that the male employee was performing satisfactorily, and that there was no basis for putting him on a performance track. That same day, Mr. Terry met with the male employee to explain that Ms. Ogden had expressed some dissatisfaction with his work. Mr. Terry then explained to the male employee that he wanted to counsel and coach him and discussed the male employees' duties and responsibilities, including several minor areas in which some improvement was needed. Mr. Terry concluded that no performance track was needed for the male employee.

4

12.     On December 5, 2008, the day after Ms. Ogden demanded that Mr. Terry document problems with the male employee, she again demanded that Mr. Terry do what he could to get the male employee "out of here." Ms. Ogden claimed that Mr. Terry had been tardy for work, and then withdrew that false accusation and stated that she needed Mr. Terry help get rid of the male employee.

13.     On January 29, 2009, Ms. Ogden directed another CLEO employee, Keijon Waters (Financial Administrator), to stop socializing, eating lunch and smoking with the male employee, since "his [Mr. Waters'] loyalty should be to [her]." Mr. Waters responded unfavorably to her request.

14.     On May 8, 2009, shortly after Ms. Ogden renewed her demands that Mr. Terry take the steps necessary to fire the male employee, Mr. Terry discussed the matter with Annette Reyes, the ABA's Human Resources officer.  They agreed that it was not wise to initiate a performance track against the male employee, particularly as his discrimination complaint was still pending.

15.     On June 26, 2009, Ms. Ogden read to Mr. Terry comments the male employee wrote in his Interim Performance Evaluation that Ms. Ogden had subjected him to disparate treatment.  Ms. Ogden quizzed Mr. Terry about these comments, and claimed that the male employee was "just trying to make a case."

16.     The male employee pursued employment opportunities outside of the ABA.  Ms. Ogden gave the male employee a bad job reference in April 2010, when he had applied for a position at the University of the District of Columbia Law School, even though ABA's Human Resources policy is that only Human Resources, not individual supervisors, can provide employee references.

17.     Ultimately, the male employee resigned from CLEO on April 21, 2010, less than one year after ABA HR Director Annette Reyes and ABA Assistant General Counsel and Ethics Officer Lauren Robinson interviewed all of CLEO staff, including Mr. Terry, about his disability discrimination complaint against Ms. Ogden.

18.     When he first assumed the Associate Director position, Mr. Terry had limited knowledge of the federal grant budget process.  Early in his tenure as Associate Director, he primarily provided background material for the application narrative such as student program objectives, law school tuition updates and other general information updates.  Ms. Ogden prepared the budget and the budget narrative.

19.     By 2007, Mr. Terry had gained a better understanding of the grant application process.  As he gained a better understanding of the process, he realized that previous grant applications that ABA/CLEO had submitted to the U.S. Department of Education to draw down the federal appropriation contained numerous padded and false expenses (e.g. permanent personnel positions which were never filled, erroneous pre-law travel recruitment expenses, erroneous travel by the law school academic coordinator, erroneous presenter travel for college scholar seminars, consultant positions which were not filled, sub-contracts that were never awarded and various other smaller line-items that were questionable).

20.     In 2008, Mr. Terry attempted to remove the erroneous/false expenses from the budget submitted to DOE and replace them with actual, documented expenses.  Mr. Terry was successful in some instances, but his efforts were met with great resistance from Ms. Ogden.  Ms. Ogden insisted that certain personnel, sub-contract and consultant line-items be kept in the grant, even though she had no intention of filling these positions.

21.     By 2009, as a result of Mr. Terry's involvement with the grant and his efforts to comply with federal requirements, Ms. Ogden had less room to manipulate the grant funds. At this point, most vacant permanent and consultant positions had been eliminated from the grant application and the program offerings were drastically increased, consuming all of the federal appropriation. As a result, Ms. Ogden devised a new scheme to conceal the program and travel expenses by "jimmying the budget." When Mr. Terry presented Ms. Ogden with the 2010 draft budget, which was unbalanced by $370,000, Ms. Ogden simply slashed the numbers in the budget summary without reducing the expenses in the budget narrative. This tactic caused CLEO to be drastically over budget for a number of years, especially in the travel expense category.

22.     CLEO is currently in the process of spinning-off from the ABA and becoming an independent organization. As part of the CLEO's transition from the ABA, the CLEO Council authorized Ms. Ogden to hire an accounting firm—Cobbs, Bazillo & Associates, to review CLEO's finances and to render an opinion on the advantages and disadvantages of separating from the ABA. The accounting firm concluded that CLEO had been operating in the red for a number of years. The accounting firm was paid $13,000 for its work, but the firm's formally written unqualified opinion was not revealed or shared with the CLEO Council or any members of the CLEO staff.

23.     In 2010, Ms. Ogden attempted to distance herself from the grant process. Mr. Terry was assigned the task of preparing the initial draft of the 2010 grant application. Ms. Ogden was nonresponsive to Mr. Terry's questions about grant programs and expenses. Ms. Ogden agreed to speak to Mr. Terry about the grant application only after Mr. Terry complained to Ms. Ogden's supervisors. When Ms.

Ogden did meet with Mr. Terry, she attempted to persuade him to cut and paste an Excel spreadsheet which she had prepared with employee salaries into the grant budget. Although there were only twelve staff positions, Ms. Ogden's spreadsheet contained thirteen staff positions.  Ms. Ogden's intent was to pay Jackie Hancock, a temporary employee and personal friend, from the erroneous thirteenth position, but Mr. Terry caught the scheme.

24.     Starting in the summer of 2010, Mr. Terry raised specific concerns about grant compliance issues – initially with Ms. Ogden, who dismissed them out of hand, and then with ABA Human Resources Director Annette Reyes, by both telephone and email starting on August 9, 2010.  Mr. Terry raised the following concerns with both Ms. Ogden and Ms. Reyes:

a) Ms. Ogden hired her personal friends and acquaintances of her friends (e.g., Nerissa Skillman, Judy Kim and Chipo Nyambuya) to do contract work not authorized under the DOE grant – e.g., the payment to Ms. Nyambuya was $41,507, even though the grant line item for the work that she did was only $21,000.

b) Ms. Ogden incurred travel expenses significantly exceeding budgeted amounts, or not included in the budget, particularly for the Executive Director's travel.  DOE specifically told Mr. Terry that program staff travel must be specifically identified in the budget, and only individuals who are specifically identified in the budget as working on the project can travel on grant funds.

c) Ms. Ogden used numerous temporary employees to fill positions that the budget stated would be filled by permanent ABA employees, particularly to hire a friend, Jacqueline Hancock (a convicted felon who could not be hired by ABA as a permanent employee). Ogden used Ms. Hancock's resume in the federal application to make her appear to be a regular ABA employee. Ogden rejected Mr. Terry's recommendation of two candidates out of ten interviewed for the Records Management Assistant position, and kept Ms. Hancock in that position as a temporary employee. Although Ms. Ogden approved an employment requisition for the Records Management Assistant position, she prevented the position from being filled. DOE told Mr. Terry that since the budget requested a full time position, DOE expected the staffing pattern to remain, and DOE also told Mr. Terry that ABA could not change the scope and staffing pattern after the budge was approved.

d) Ms. Ogden used a friend's agency (Diversity Services) to hire temporary employees from 2002 through 2008, and thereby provided her friend with a lucrative contract, instead of using the ABA's authorized temporary employee service contractor. It was not until 2010 that Ogden used the ABA'a authorized temporary service.

e) Ms. Ogden submitted budgets that called for financial assistance awards to be distributed to CLEO fellows at ABA-accredited law schools, but she unilaterally diverted the funds, without authorization from DOE, from the student grants to operational expenses and other overhead. Mr. Terry also

reported that Ogden was "jimmying" the budget through deliberately underreporting financial assistance awards and travel expenses in the budgets.

25.    On August 24, 2010, Mr. Terry met Ms. Reyes (HR Director), Jim Swanson (Senior Director, DC Operations); Robert Horowitz (Director); Elissa Lichtenstein (Director and Ms. Ogden's supervisor), and Nick Michna (Director of Training and Development).  At this meeting, Mr. Terry discussed these issues at length. He explained that his DOE contacts had told him that CLEO was required to request written approval for any expenditures and programmatic changes that were not in the budgets, to forego any potential audit liability, as required by the DOE regulations, 34 C.F. R. Sec. 74.25.  Mr. Horowitz seemed unhappy with Mr. Terry's reports because he had signed these contracts.  Mr. Swanson agreed that Ms. Ogden was trying to "jimmy" the budget.

26.    On October 20, 2010, Mr. Terry again met with Mr. Horowitz and Ms. Lichtenstein, to provide additional information about these issues, because the ABA had not responded to his complaint.  In response, Mr. Horowitz and Ms. Lichtenstein claimed that all of Ms. Ogden's actions were "acceptable," but they provided no justification for their assertions.  Mr. Terry reiterated to them that his contacts at DOE had told him otherwise.

27.    On February 28, 2011, Ms. Ogden requested that Keijon Waters (CLEO Financial Administrator) "re-code" the excess payments to Ms. Nyambuya to remove them from the federal grant account.  On March 2, 2011, Mr. Terry told the senior managers who attended the August 24, 2010, meeting about the improper request by Ms. Ogden to cover-up the excess payments.

28.     On March 7, 2011, Mr. Swanson informed Mr. Terry that Harriet Ouma,
the ABA Director of Internal Audit, would investigate his disclosures about CLEO's
budgets and expenditures. Mr. Terry met with Ms. Ouma on March 10, 2011. Ms. Ouma
specifically told him that he was protected as a "whistleblower."

29.     Mr. Terry explained to Ms. Ouma that the CLEO/Thurgood Marshall
budget for the years 2009, 2010, 2011 and the 2011 revised budget included the position
description for the Executive Director position, which stipulated that CLEO's Executive
Director would hold an active bar membership. However, Ms. Ogden's membership in
the District of Columbia bar was suspended in 1999 for non-payment of dues, and her
membership in the Maryland Bar was also suspended as of June 10, 1994 for non-
payment of dues. For at least three years, Ms. Ogden submitted budgets to the DOE
which falsely stated that she had an active bar membership.

30.     Mr. Terry reported to Ms. Ouma the hostile work environment created by
Ms. Ogden, including her demands that he create a paper trail against the male employee
so that he could be fired after he filed a disability discrimination complaint against her,
and her retaliation against Mr. Terry when he refused to go along with her illegal
demands regarding the male employee.

31.     On September 22 and 23, 2011, Ms. Ouma told Mr. Terry that Ms. Ogden
and her supervisor, Ms. Lichtenstein, were trying to fire both Mr. Terry and Mr. Waters,
or otherwise have them demoted, but that ABA Human Resources refused to approve
those retaliatory actions. Ms. Ouma told Mr. Terry that this was a "classic case of
retaliation," that he had a lot of support at the ABA and that he should fight this. Mr.

Terry expressed shock at learning that he was to be fired or demoted.  Ms. Ouma reassured him that his job would be protected.

32.     On September 26, 2011, when Mr. Terry returned to the office from a two-week vacation. Ms. Ogden told Mr. Terry that he should attend a meeting with Ms. Lichtenstein and her to discuss the realignment of CLEO staff responsibilities under the 2011 revised federal grant application.  At that meeting, Ms. Ogden and Ms. Lichtenstein informed Mr. Terry that he would assume the duties of the Law School Academic Coordinator position, and that some of his duties as the CLEO Associate Director would be removed or reduced, even though he had held the Associate Director position for six years.  Specifically, Mr. Terry would no long be responsible for the Six-Week Summer Institute, which is CLEO's flagship program, or the various college-level programs (e.g., Road to Law School; Sophomore Super Saturday; Juniors Jumpstart the LSAT; Achieving Success in the Application Process), even though the supervision of those programs was the major part of his job duties and responsibilities.  Ms. Ogden and Ms. Lichtenstein admitted that the revised budget (which had already been submitted to DOE and approved) did not reflect these changed job duties, and were alarmed when Mr. Terry asked why those job duties were not included in the revised budget.  Further, the revised budget listed much lower budget amounts (or even a zero amount) for the programs that the new Law School Academic Coordinator/Associate Director position was to supervise, so that this position would have substantially more diminished responsibilities.  Mr. Terry requested a written summary of these changes.  (The written changes were given to Mr. Terry on October 19, 2011.)  Ms. Ogden and Ms. Lichtenstein told Mr. Terry that if he did not accept the new position, he would be given two weeks' severance pay for each

year he had worked at the ABA, and one month of medical benefits, and would have to resign that same day.

33.      Even before Ms. Ogden told Mr. Terry that he would have to accept the downgraded job responsibilities, she had already begun to transfer his job duties to other CLEO/ABA employees.   For example, Ms. Ogden had staff who are not attorneys (Mentoring/Development Coordinator and Director of Admissions) prepare proposals and coordinate student programs, even though the projects should have been assigned to Mr. Terry.   Ms. Ogden also excluded Mr. Terry from numerous meetings involving law student and college student programs even though those programs were at the core of Mr. Terry's job responsibilities.   Ms. Ogden claimed that she did so because Mr. Terry "complicates matters" and had become a "thorn in her side." Ms. Ogden also repeatedly told Mr. Terry that he was "too conservative in [his] interpretation of federal grant rules and regulations," a clear reference to her strong displeasure with his protected conduct in insisting that the ABA comply with the federal statutes and regulations governing the use of the federally appropriated ABA/CLEO funds.

34.      On September 27, 2011, Ms. Ogden gave Mr. Terry a downgraded performance evaluation, which was significantly lower (2.26 on a 1-5 scale) than his March 2011 mid-year review (3.57) and his 2010 evaluation.   In fact, during the year leading up to the evaluation, Mr. Terry had performed the additional duties of the Law School Academic Coordinator since April 2010, as the male employee had resigned and had not been replaced.   Thus, even though Mr. Terry was performing two jobs at the same time, and was doing so in a professional manner, Ms. Ogden downgraded his performance evaluation without justification.   The consequence of this evaluation was

that it would be easier for Ms. Ogden to place Mr. Terry on a performance track, or to take other adverse employment actions against him.

35.    On October 19, 2011, Mr. Terry received a new Job Description from the ABA via Elissa Lichtenstein, which detailed his new duties and responsibilities. In the new position description, Mr. Terry's supervisory role was reduced from five people to one person, and his duties and responsibilities were substantially changed from the duties and responsibilities that had been approved by DOE in the 2011 revised application.

36.    On November 15, 2011, Mr. Terry was advised by DOE Program Specialist Reginald Williams that the ABA had not requested in writing or received approval from DOE to change the duties and responsibilities of the Associate Director position as described in the 2011 revised grant application as required by federal regulations.

37.    During these incidents, Mr. Terry experienced a great deal of anxiety and emotional distress. On November 23, 2011, Mr. Terry visited his doctor and was placed on medication to address stress, anxiety and lack of sleep. Mr. Terry was away from work on short term disability from December 2011 through April 2012, due to medical conditions that had been exacerbated by the stress placed on Mr. Terry by the ABA.

38.    Upon his return to work in late April 2012, Mr. Terry was told by Ms. Ogden that he would not be traveling to any CLEO Programs or conferences. He continues to be excluded from any and all management meetings and prevented from performing the duties of the CLEO Associate Director as described in the federal application.

**COUNT I**
**Retaliation for Reporting Violations of the False Claims Act**

Plaintiff adopts by reference each of the allegations in the paragraphs above.

39.   At all pertinent times, Defendant ABA was an employer subject to provisions of the False Claims Act, 37 U.S.C. Sec. 3730(h)(1).   Defendants Ogden and Lichtenstein are agents of the ABA and are personally liable for their actions under the False Claims Act.

40. At all pertinent times, Plaintiff Terry was a whistleblower entitled to protection under the False Claims Act.

41. The False Claims Act's anti-retaliation clause, 37 U.S.C. Sec. 3730(h)(1) provides that "[a]ny employee, contractor, or agent shall be entitled to all relief necessary to make that employee, contractor, or agent whole, if the employee, contractor, or agent is discharged, demoted, suspended, threatened, harassed, or in any other manner discriminated against in the terms and conditions of employment because of lawful acts done by the employee, contractor, agent or associated others in furtherance of an action under this section or other efforts to stop 1 or more violations of this subchapter."   Mr. Terry made protected disclosures when he reported widespread fraud in securing and expending federal funding at CLEO/ABA.   Defendants responded to the serious allegations of fraud by subjecting him to a hostile work environment, false accusations about of his performance, defaming his character and professional reputation, threatening Mr. Terry's employment and later removing his Associate Director duties.

42.   As a direct and proximate cause of the Defendants' actions, Mr. Terry lost his Associate Director position, and suffered damage to his professional reputation, emotional distress, embarrassment, anxiety, fatigue, mental distress, humiliation, illness, and damage to his employment and personal reputation.

15

WHEREFORE, Mr. Terry prays that this court enter judgment against Defendants ABA, CLEO, and the individual Defendants;

A.      Finding that Defendant retaliated against Mr. Terry in violation of the False Claims Act and constructively and wrongfully discharged Mr. Terry;

      B.      Awarding to Mr. Terry damages, including compensatory damages for the financial and emotional harm caused by defendant, including prejudgment and post-judgment interest, and punitive damages.

      C.      Awarding payment of all fees, costs, expenses, including attorney's fees and expert fees;

      D.      Awarding Plaintiff any other relief the court deems just and proper.

## COUNT II
### Violation of the District of Columbia Human Rights Act
### (Gender Discrimination and Retaliation)

Mr. Terry adopts by reference each of the allegations in the paragraphs above.

43. At all pertinent times, Defendants ABA, CLEO, Ogden, and Lichtenstein were employers subject to the provisions of the D.C. Human Rights Act, 2-1401 et seq., of the District of Columbia Code. Defendants Ogden, and Lichtenstein are agents of the ABA and are personally liable for their actions under the D.C. Human Rights Act.

44. At all pertinent times, Plaintiff Terry was an employee entitled to protection under the D.C. Human Rights Act.

45. The D.C. Human Rights Act prohibits discrimination in employment based on an individual's gender, and prohibits retaliation for engaging in protected activity.

46. Defendants, in violation of the D.C. Human Rights Act, knowingly and intentionally engaged in unlawful discrimination against Mr. Terry based on his gender.

Specifically, Mr. Terry was subjected to a hostile work environment and disparate treatment when he was targeted for removal when a similarly situated female engaged in serious misconduct and was not removed from her position or constructively discharged. Defendant ABA was aware that Defendant Ogden engaged in widespread fraud and was not removed from her position.  In addition, Defendant Ogden retaliated against Mr. Terry because he would not assist her in disciplining and terminating the male employee, and because Mr. Terry complained about Defendant Ogden creating a hostile work environment.  Defendants at all times had actual and constructive knowledge of the conduct described above.

47. Defendants had no legitimate business reason for any such acts.

48. Mr. Terry is informed and believes, and based thereon, alleges that, in addition to the practices enumerated above, Defendants may have engaged in other discriminatory practices which are not yet fully known.  At such time as such discriminatory practices become known, Mr. Terry will seek leave of court to amend this Complaint in that regard.

WHEREFORE, Mr. Terry prays that this court enter judgment against Defendant ABA and the CLEO and the individual Defendants;

A.      Finding that Defendants discriminated against Mr. Terry based on his gender and retaliated against him for engaging in protected activity;

B.      Awarding to Mr. Terry damages, including compensatory damages for the financial and emotional harm caused by defendant, including prejudgment and post-judgment interest, and punitive damages.

17

C.    Awarding payment of all fees, costs, expenses, including attorney's fees and expert fees;

D.    Awarding Plaintiff any other relief the court deems just and proper.

Date:                                                    Respectfully submitted,

_____
David A. Branch, DC Bar # 438764
Law Offices of David A. Branch and
Associates, PLLC
1901 Pennsylvania Avenue, NW
#802
Washington, DC 20006
(202) 785-2805 phone
(202) 785-0289 fax
dablaw@erols.com

## JURY TRIAL DEMAND

Plaintiff demands a jury trial on all claims.

18



# SUPERIOR COURT OF THE DISTRICT OF COLUMBIA
## CIVIL DIVISION

RODERICK TERRY
    Vs.                                 C.A. No.       2012 CA 006536 B
CASSANDRA SNEED OGDEN

## INITIAL ORDER AND ADDENDUM

Pursuant to D.C. Code § 11-906 and District of Columbia Superior Court Rule of Civil Procedure ("SCR Civ") 40-I, it is hereby **ORDERED** as follows:

(1) Effective this date, this case has assigned to the individual calendar designated below. All future filings in this case shall bear the calendar number and the judge's name beneath the case number in the caption. On filing any motion or paper related thereto, one copy (for the judge) must be delivered to the Clerk along with the original.

(2) Within 60 days of the filing of the complaint, plaintiff must file proof of serving on each defendant: copies of the Summons, the Complaint, and this Initial Order.  As to any defendant for whom such proof of service has not been filed, the Complaint will be dismissed without prejudice for want of prosecution unless the time for serving the defendant has been extended as provided in SCR Civ 4(m).

(3) Within 20 days of service as described above, except as otherwise noted in SCR Civ 12, each defendant must respond to the Complaint by filing an Answer or other responsive pleading. As to the defendant who has failed to respond, a default and judgment will be entered unless the time to respond has been extended as provided in SCR Civ 55(a).

(4) At the time and place noted below, all counsel and unrepresented parties shall appear before the assigned judge at an Initial Scheduling and Settlement Conference to discuss the possibilities of settlement and to establish a schedule for the completion of all proceedings, including, normally, either mediation, case evaluation, or arbitration. Counsel shall discuss with their clients **prior** to the conference whether the clients are agreeable to binding or non-binding arbitration. **This order is the only notice that parties and counsel will receive concerning this Conference.**

(5) Upon advice that the date noted below is inconvenient for any party or counsel, the Quality Review Branch (202) 879-1750 may continue the Conference **once**, with the consent of all parties, to either of the two succeeding Fridays. Request must be made not less than six business days before the scheduling conference date. No other continuance of the conference will be granted except upon motion for good cause shown.

(6) Parties are responsible for obtaining and complying with all requirements of the General Order for Civil cases, each Judge's Supplement to the General Order and the General Mediation Order.   Copies of these orders are available in the Courtroom and on the Court's website http://www.dccourts.gov/.

Chief Judge Lee F. Satterfield

Case Assigned to:  Judge MICHAEL L RANKIN
Date:  August 10, 2012
Initial Conference: 9:30 am, Friday, November 09, 2012
Location:  Courtroom 517
                500 Indiana Avenue N.W.
                WASHINGTON, DC  20001                    Caio.doc

## ADDENDUM TO INITIAL ORDER AFFECTING
## ALL MEDICAL MALPRACTICE CASES

In accordance with the Medical Malpractice Proceedings Act of 2006, D.C. Code § 16-2801, et seq. (2007 Winter Supp.), "[a]fter an action is filed in the court against a healthcare provider alleging medical malpractice, the court shall require the parties to enter into mediation, without discovery or, if all parties agree[,] with only limited discovery that will not interfere with the completion of mediation within 30 days of the Initial Scheduling and Settlement Conference ("ISSC"), prior to any further litigation in an effort to reach a settlement agreement.  The early mediation schedule shall be included in the Scheduling Order following the ISSC.  Unless all parties agree, the stay of discovery shall not be more than 30 days after the ISSC." D.C. Code § 16-2821.

To ensure compliance with this legislation, on or before the date of the ISSC, the Court will notify all attorneys and *pro se* parties of the date and time of the early mediation session and the name of the assigned mediator.  Information about the early mediation date also is available over the internet at https://www.dccourts.gov/pa/.  To facilitate this process, all counsel and *pro se* parties in every medical malpractice case are required to confer, jointly complete and sign an EARLY MEDIATION FORM, which must be filed no later than ten (10) calendar days prior to the ISSC.  Two separate Early Mediation Forms are available.  Both forms may be obtained at www.dccourts.gov/medmalmediation.  One form is to be used for early mediation with a mediator from the multi-door medical malpractice mediator roster; the second form is to be used for early mediation with a private mediator.  Both forms also are available in the Multi-Door Dispute Resolution Office, Suite 105, 515 5th Street, N.W. (enter at Police Memorial Plaza entrance).  Plaintiff's counsel is responsible for eFiling the form and is required to e-mail a courtesy copy to earlymedmal@dcsc.gov.  *Pro se* Plaintiffs who elect not to eFile may file by hand in the Multi-Door Dispute Resolution Office.

A roster of medical malpractice mediators available through the Court's Multi-Door Dispute Resolution Division, with biographical information about each mediator, can be found at www.dccourts.gov/medmalmediation/mediatorprofiles.  All individuals on the roster are judges or lawyers with at least 10 years of significant experience in medical malpractice litigation.  D.C. Code § 16-2823(a).  If the parties cannot agree on a mediator, the Court will appoint one.  D.C. Code § 16-2823(b).

The following persons are required by statute to attend personally the Early Mediation Conference: (1) all parties; (2) for parties that are not individuals, a representative with settlement authority; (3) in cases involving an insurance company, a representative of the company with settlement authority; and (4) attorneys representing each party with primary responsibility for the case.  D.C. Code § 16-2824.

No later than ten (10) days after the early mediation session has terminated, Plaintiff must eFile with the Court a report prepared by the mediator, including a private mediator, regarding: (1) attendance; (2) whether a settlement was reached; or, (3) if a settlement was not reached, any agreements to narrow the scope of the dispute, limit discovery, facilitate future settlement, hold another mediation session, or otherwise reduce the cost and time of trial preparation.  D.C. Code § 16-2826.  Any Plaintiff who is *pro se* may elect to file the report by hand with the Civil Clerk's Office.   The forms to be used for early mediation reports are available at www.dccourts.gov/medmalmediation.

Chief Judge Lee F. Satterfield

Caio.doc

**Superior Court of the District of Columbia**
**CIVIL DIVISION**
500 Indiana Avenue, N.W., Suite 5000
Washington, D.C. 20001 Telephone: (202) 879-1133

Roderick Terry
_____
Plaintiff

0006530-12

vs.

Cassandra Sneed Ogden, et al.
_____
Defendant

Case Number _____

Serve on: American Bar Association
321 North Clark Street, 21st floor
Chicago, IL 60654

**SUMMONS**

To the above named Defendant:

You are hereby summoned and required to serve an Answer to the attached Complaint, either personally or through an attorney, within twenty (20) days after service of this summons upon you, exclusive of the day of service. If you are being sued as an officer or agency of the United States Government or the District of Columbia Government, you have sixty (60) days after service of this summons to serve your Answer. A copy of the Answer must be mailed to the attorney for the party plaintiff who is suing you. The attorney's name and address appear below. If plaintiff has no attorney, a copy of the Answer must be mailed to the plaintiff at the address stated on this Summons.

You are also required to file the original Answer with the Court in Suite 5000 at 500 Indiana Avenue, N.W., between 8:30 a.m. and 5:00 p.m., Mondays through Fridays or between 9:00 a.m. and 12:00 noon on Saturdays. You may file the original Answer with the Court either before you serve a copy of the Answer on the plaintiff or within five (5) days after you have served the plaintiff. If you fail to file an Answer, judgment by default may be entered against you for the relief demanded in the complaint.

David A. Branch
_____
Name of Plaintiff's Attorney

1901 Pennsylvania Ave NW Ste 802
_____
Address

Washington DC 20006
_____

202-785-2805
_____
Telephone

*Clerk of the Court*

By _____
Deputy Clerk

Date 8/10/12

如需翻译, 请打电话 (202) 879-4828    Veuillez appeler au (202) 879-4828 pour une traduction    Dé có một bài dịch, hãy gọi (202) 879-4828
번역을 원하시면, (202) 879-4828 로 전화주십시오     የትርጉም እርዳታ ከፈለጉ በ (202) 879-4828 ይደውሉ

IMPORTANT: IF YOU FAIL TO FILE AN ANSWER WITHIN THE TIME STATED ABOVE, OR IF, AFTER YOU ANSWER, YOU FAIL TO APPEAR AT ANY TIME THE COURT NOTIFIES YOU TO DO SO, A JUDGMENT BY DEFAULT MAY BE ENTERED AGAINST YOU FOR THE MONEY DAMAGES OR OTHER RELIEF DEMANDED IN THE COMPLAINT. IF THIS OCCURS, YOUR WAGES MAY BE ATTACHED OR WITHHELD OR PERSONAL PROPERTY OR REAL ESTATE YOU OWN MAY BE TAKEN AND SOLD TO PAY THE JUDGMENT. IF YOU INTEND TO OPPOSE THIS ACTION, *DO NOT FAIL TO ANSWER WITHIN THE REQUIRED TIME.*

If you wish to talk to a lawyer and feel that you cannot afford to pay a fee to a lawyer, promptly contact one of the offices of the Legal Aid Society (202-628-1161) or the Neighborhood Legal Services (202-279-5100) for help or come to Suite 5000 at 500 Indiana Avenue, N.W., for more information concerning places where you may ask for such help.

See reverse side for Spanish translation
Vea al dorso la traducción al español

FORM SUMMONS - Jan. 2011                                                                CASUM.doc



**Superior Court of the District of Columbia**
**CIVIL DIVISION**
500 Indiana Avenue, N.W., Suite 5000
Washington, D.C. 20001 Telephone: (202) 879-1133

Roderick Terry
_____
                                                    Plaintiff

vs.                                        Case Number  0006530-12

Cassandra Sneed Ogden, et al.              Serve on: Council on Legal Education
_____                   740 14th Street NW 1st Floor
                                                    Washington DC 20005
                                                    Defendant

## SUMMONS

To the above named Defendant:

       You are hereby summoned and required to serve an Answer to the attached Complaint, either personally or through an attorney, within twenty (20) days after service of this summons upon you, exclusive of the day of service.  If you are being sued as an officer or agency of the United States Government or the District of Columbia Government, you have sixty (60) days after service of this summons to serve your Answer.  A copy of the Answer must be mailed to the attorney for the party plaintiff who is suing you.  The attorney's name and address appear below.  If plaintiff has no attorney, a copy of the Answer must be mailed to the plaintiff at the address stated on this Summons.

       You are also required to file the original Answer with the Court in Suite 5000 at 500 Indiana Avenue, N.W., between 8:30 a.m. and 5:00 p.m., Mondays through Fridays or between 9:00 a.m. and 12:00 noon on Saturdays. You may file the original Answer with the Court either before you serve a copy of the Answer on the plaintiff or within five (5) days after you have served the plaintiff. If you fail to file an Answer, judgment by default may be entered against you for the relief demanded in the complaint.

David A. Branch
_____                    _____
Name of Plaintiff's Attorney                              Clerk of the Court

1901 Pennsylvania Ave NW Ste 802
_____          By  _____
Address                                              Deputy Clerk
Washington DC 20006
_____

202-785-2805
_____          Date  8/10/12
Telephone

如需翻译, 请打电话 (202) 879-4828     Veuillez appeler au (202) 879-4828 pour une traduction    Để có một bài dịch, hãy gọi (202) 879-4828
번역을 원하시면, (202) 879-4828 로 전화주십시오     የአማርኛ ትርጉም ለማግኘት (202) 879-4828 ይደውሉ

       **IMPORTANT:  IF YOU FAIL TO FILE AN ANSWER WITHIN THE TIME STATED ABOVE, OR IF, AFTER YOU ANSWER, YOU FAIL TO APPEAR AT ANY TIME THE COURT NOTIFIES YOU TO DO SO, A JUDGMENT BY DEFAULT MAY BE ENTERED AGAINST YOU FOR THE MONEY DAMAGES OR OTHER RELIEF DEMANDED IN THE COMPLAINT. IF THIS OCCURS, YOUR WAGES MAY BE ATTACHED OR WITHHELD OR PERSONAL PROPERTY OR REAL ESTATE YOU OWN MAY BE TAKEN AND SOLD TO PAY THE JUDGMENT.  IF YOU INTEND TO OPPOSE THIS ACTION, _DO NOT FAIL TO ANSWER WITHIN THE REQUIRED TIME._**

       If you wish to talk to a lawyer and feel that you cannot afford to pay a fee to a lawyer, promptly contact one of the offices of the Legal Aid Society (202-628-1161) or the Neighborhood Legal Services (202-279-5100) for help or come to Suite 5000 at 500 Indiana Avenue, N.W., for more information concerning places where you may ask for such help.

See reverse side for Spanish translation
Vea al dorso la traducción al español

FORM SUMMONS - Jan. 2011                                                      CASUM.doc

**IN THE SUPERIOR COURT OF THE DISTRICT OF COLUMBIA**
CIVIL DIVISION
500 INDIANA AVENUE NW ROOM 5000
WASHINGTON, DC 20001
(202) 879-1133

FILED
CIVIL ACTIONS BRANCH

SEP 2 7 2012

Superior Court
of the District of Columbia
Washington, DC.

Roderick Terry
Plaintiff(s)

vs

Case Number: 2012-CA-006536-B

Cassandra Sneed Ogden et al.
Defendant(s)

### AFFIDAVIT OF SERVICE

I, Lorenzo Kenerson, the undersigned, hereby certify that on September 26, 2012 at 6:55 AM, I executed service of process upon **CASSANDRA SNEED OGDEN**, at 409 Pine Ridge Court, Upper Marlboro, MD 20774 by delivering to and leaving with personally, copies of Summons, Complaint, and Initial Order and Addendum. Cassandra Sneed Ogden is described as a Black female, approximately 5' 9" tall, 200-225 pounds, brown eyes, black/gray hair, and 58 years of age. The undersigned further certifies that my place of business is 4626 Wisconsin Avenue NW #300, Washington, DC 20016 (telephone 202-887-0700); that I am over the age of 18 years; and that I am not a party to this action.

I solemnly declare and affirm under penalties of perjury that the matters and facts set forth herein are true to the best of my knowledge, information, and belief.

Date: September 26, 2012

LORENZO KENERSON
Washington Pre-Trial Services, Inc.

**NOTARY**

Sworn and subscribed before me
on September 26, 2012

_____ (seal)
Kirk A. Hornbeck
Notary Public: District of Columbia
My Commission Expires 10/31/14



IN THE SUPE⌣OR COURT OF THE DISTRICT O⌣OLUMBIA
**CIVIL DIVISION**
**500 INDIANA AVENUE NW ROOM 5000**
**WASHINGTON, DC 20001**
**(202) 879-1133**



FILED
CIVIL ACTION BRANCH
SEP 1 3 2012
Superior Court
of the District of Columbia
Washington, D.C.

Roderick Terry
Plaintiff(s)

Case Number: <u>2012-CA-006536-B</u>

vs

<u>Cassandra Sneed Ogden et al.</u>
Defendant(s)

### AFFIDAVIT OF SERVICE

I, Lorenzo Kenerson, the undersigned, hereby certify that on September 13, 2012 at 11:07 AM, I executed service of process upon **ELISSA LICHTENSTEIN**, at American Bar Association, 740 15th Street NW 9th Floor, Washington, DC 20005 by delivering to and leaving with personally, copies of Summons, Complaint, and Initial Order and Addendum. Elissa Lichtenstein is described as a White female, approximately 5' 6" tall, 160-170 pounds, brown eyes, glasses, brown hair, and 40 years of age. The undersigned further certifies that my place of business is 4626 Wisconsin Avenue NW #300, Washington, DC 20016 (telephone 202-887-0700); that I am over the age of 18 years; and that I am not a party to this action.

I solemnly declare and affirm under penalties of perjury that the matters and facts set forth herein are true to the best of my knowledge, information, and belief.

Date: September 13, 2012

NOTARY

Sworn and subscribed before me
on September 13, 2012

_____ (seal)

Kirk A. Hornbeck
Notary Public: District of Columbia
My Commission Expires 10/31/14

LORENZO KENERSON
Washington Pre-Trial Services, Inc.

# Exhibit 3

14850990v.1

IN THE SUPERIOR COURT OF THE DISTRICT OF COLUMBIA
**Civil Division**

RODERICK TERRY )
18 R STREET, NW )
WASHINGTON, DC 20001 )
    )
     Plaintiff )
    )
v. )     Civil Action No.0006536-12
    )
CASSANDRA SNEED OGDEN )
COUNCIL ON LEGAL EDUCATION )
OPPORTUNITY (CLEO) )
740 15TH STREET, NW 1ST FLOOR )
WASHINGTON, DC 20005 )
    )
     And )
    )
COUNCIL ON LEGAL EDUCATION )
OPPORTUNITY (CLEO) )
740 15TH STREET, NW 1ST FLOOR )
WASHINGTON, DC 20005 )
    )
     And )
    )
AMERICAN BAR ASSOCIATION )
321 NORTH CLARK STREET )
21ST FLOOR )
CHICAGO, IL 60654 )
    )
     And )
    )
ELISSA LICHTENSTEIN )
AMERICAN BAR ASSOCIATION )
740 15TH STREET, NW 1ST FLOOR )
WASHINGTON, DC 20005 )
    )
     Defendants. )
_____ )

## NOTICE OF FILING OF NOTICE OF REMOVAL TO
## THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLUMBIA

To:    The Clerk of the Superior Court of the District of Columbia

David A. Branch, Esq.
Law Offices of David A Branch and Associates, PLLC
1901 Pennsylvania Avenue, NW #802
Washington, DC 20006

PLEASE TAKE NOTICE that on the 3rd day of October, 2012, Defendants, American

Bar Association[1], Council on Legal Education Opportunity[2], and Elissa Lichtenstein, by and

through the undersigned counsel, and with the consent of Defendant Cassandra Sneed Ogden,

filed a Notice of Removal of this action to the United States District Court for the District of

Columbia.  A true copy of the Notice of Removal is attached hereto as Exhibit A.

Pursuant to 28 U.S.C. § 1446(d), the Superior Court of the District of Columbia may not

proceed further with this matter at this time.

> Respectfully submitted,
>
> AMERICAN BAR ASSOCIATION, COUNCIL
> ON LEGAL EDUCATION OPPORTUNITY and
> ELISSA LICHTENSTEIN
>
> By: _____
> Raymond C. Baldwin, Esq., Bar No. 461514
> James M. Mesnard, Bar No., Bar No. 404835
> Laura J. Robinson, Esq. (*to be admitted pro hac*
> *vice*)
> SEYFARTH SHAW LLP
> 975 F Street N.W.
> Washington, D.C. 20004
> (202) 463-2400
> (202) 641-9183 (fax)
> rbaldwin@seyfarth.com
> jmesnard@seyfarth.com
> ljrobinson@seyfarth.com
> *Counsel for American Bar Association, Council*
> *on Legal Education Opportunity and Elissa*
> *Lichtenstein*

---

[1] Plaintiff incorrectly identified the Defendant American Bar Association in the case caption.  Defendant American Bar Association's proper name is "American Bar Association, Inc."
[2] Council on Legal Education Opportunity is not a legal entity; its employees are employees of the American Bar Association, Inc.

<u>**CERTIFICATE OF SERVICE**</u>

I certify that a true copy of the foregoing Notice Of Filing Of Notice Of Removal To

The United States District Court For The District Of Columbia was served via first class mail,

postage prepaid, this 3rd day of October, 2012 on:

> David A. Branch
> Law Offices of David A Branch and Associates, PLLC
> 1901 Pennsylvania Avenue, NW #802
> Washington, DC 20006

By: _____
    James M. Mesnard

14894907v.1 / 68354-000003